Donald Troy MILLER, Plaintiff,

v.

NATIONAL BROKERAGE SERVICES, INC.; Health Claims Services; Loyalty Life Insurance Company; Lexington Insurance Company; Sierra Administration Managers, Inc.; Does I–X; ABC Corporations I–X; and XYZ Partnerships I–X, Defendants.

No. CV–N–90–78–ECR.

United States District Court,
D. Nevada.

May 6, 1991.

Victor G. Drakulich, Reno, Nev., for Donald Troy Miller.

Edward J. Lemons, Reno, Nev., for Lexington Ins. Co.

J. Kenneth Creighton, Stephen S. Kent, Reno, Nev., for Loyalty Life Ins. Co.

Don Springmeyer, Reno, Nev., for National Brokerage Services, Inc.

## ORDER

EDWARD C. REED, Jr., Chief Judge.

Plaintiff is the beneficiary of life insurance proceeds allegedly due plaintiff because plaintiff's father, the insured, died. Plaintiff's father was employed by Flowers Distributing ("Flowers"), a distributor of frozen food. Plaintiff asserts that defendants, all allegedly involved with a life insurance policy or life insurance policies insuring the life of plaintiff's father, have wrongfully withheld from plaintiff $10,000, the benefits under the policy due upon the death of the insured.

On December 28, 1989, plaintiff filed a complaint (document # 1A) in the Second Judicial Court of the State of Nevada in and for the County of Washoe, alleging four claims for relief: (1) Breach of Contract; (2) Bad Faith; (3) Negligence; (4) Punitive Damages. Each of these claims seeks relief under Nevada law.

On February 15, 1990, defendant Lexington Insurance Company ("Lexington") filed a Notice of Removal (document # 1) in this court. On March 8, 1990, defendant Loyalty Life Insurance Company ("Loyalty") filed a document (# 5) joining in Lexington's petition for removal. To this date, plaintiff has not objected to the removal or sought remand on the basis of a technically improper removal. Since a removal without the timely consent of all defendants, while improper, does not deprive this court of subject matter jurisdiction, plaintiff has waived any objection to improvident removal under 28 U.S.C. § 1447(c) by not making such an objection within 30 days after Lexington filed the notice of removal.

On November 30, 1990, defendants National Brokerage Services, Inc. ("National") and Lexington filed a motion (document # 21) for summary judgment against plaintiff, asserting that ERISA preempts each of plaintiff's causes of action. Plaintiff filed an opposition (document # 26) on February 1, 1991. In his opposition, plaintiff also requests that we remand the case to state court for lack of the jurisdictional minimum amount in controversy, or, in the alternative, allow plaintiff to file an amended complaint stating claims under ERISA. National and Lexington filed a reply (document # 32) on February 27, 1991.

On December 12, 1990, defendant Loyalty filed a motion (document # 23) for summary judgment against plaintiff, asserting that ERISA preempts each of plaintiff's causes of action, and that plaintiff failed to present any evidence by way of affidavit or exhibit showing that Loyalty had a contractual relationship with plaintiff. Plaintiff filed an opposition (document # 26) on February 1, 1991. In his opposition, plaintiff also requests that should we find that ERISA preempts plaintiff's claims, that we remand the case to state court for lack of the jurisdictional minimum amount in controversy, or, in the alternative, allow plaintiff to file an amended complaint stating claims under ERISA. Loyalty filed a reply on March 5, 1991 (document # 33).

We address National's/Lexington's ("defendants'") motion for summary judgment first. These defendants assert that ERISA preempts each of plaintiff's state law claims, which constitute plaintiff's entire complaint. Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact; once this burden is met the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25, 106 S.Ct. 2548, 2552–54, 91 L.Ed.2d 265 (1986). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Trial courts should act with caution in granting summary judgment and

may deny summary judgment where there is reason to believe that the better course would be to proceed to trial. *Id.* at 255, 106 S.Ct. at 2513.

As stated previously, defendants argue that summary judgment should be granted in their favor because plaintiff's state-law claims are preempted by ERISA. To obtain summary judgment on the basis of federal preemption, defendants must prove two things: (1) that the plan under which plaintiff's father was insured constituted an employee welfare benefit plan within ERISA; and (2) that plaintiff's state claims are preempted by ERISA.

Plaintiff is the son of the insured, now deceased, and beneficiary of the deceased's life insurance policy. The deceased was employed by Flowers, a distributor of frozen food. The deceased allegedly purchased life insurance through his employer, who had various arrangements with the defendants. Originally, the deceased purchased insurance from New York Life Insurance Company under a multi-employer trust plan (MET) that provided insurance to employees of Flowers. Among his coverage was a $10,000 life insurance policy.

On November 1, 1988, coverage with New York Life Insurance Company terminated. Through Flowers, the deceased was offered life insurance from defendants National and Health Claims Services ("HCS"), or another company. The deceased chose the former. Defendant Loyalty was the carrier who was going to provide the coverage. However, Loyalty never provided coverage. Community Life Insurance Company ("Community") ended up providing life insurance to the deceased.

On April 29, 1989, the deceased died. Community, not a defendant in this case, has not paid plaintiff the $10,000. Plaintiff, however, has obtained $10,000 from New York Life Insurance Company, allegedly under a separate plan.

■ Defendants argue that the plan with Community, is an employee welfare benefit plan covered by ERISA. 29 U.S.C. § 1002(1) defines an employee welfare benefit plan in pertinent part to mean:

any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, ... benefits in the event of death ...

29 U.S.C. § 1002(1).

In short, an employee welfare benefit plan requires an employee welfare benefit and a plan within the meaning of ERISA. *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1502 (9th Cir.1985).

The plan at issue here apparently provides for employee welfare benefits within the meaning of ERISA. Section 1002(1) explicitly includes "benefits in the event of death" within its definition of employee welfare benefits.

Whether the plan also qualifies as a "plan" within the meaning of ERISA presents a more troublesome issue. Under 29 U.S.C. § 1003(a), ERISA coverage extends to any benefit plan "if it is established or maintained (1) by any employer engaged in commerce or in any industry or activity affecting commerce; or (2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or (3) by both." "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir.1988) (citing *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987)).

Exhibit B of defendants' motion indicates that Flowers intended its plan to be an ERISA plan and to comply with the requirements of ERISA. Flowers appears to be engaged in a business at least affecting interstate commerce. Further, it is evident that Flowers at least maintains the plan by contributing 100% of the premiums. Plaintiff does not dispute this fact. Further,

Flowers maintains records in relation to the plan and carries on other administrative duties related to the plan.

In *Kanne, supra,* the Ninth Circuit noted that under 29 C.F.R. § 2510.3–1(j) (1987), a plan does not fall under ERISA if under it, no contributions are made by the employer, participation in the program is voluntary for employees, the employer does not participate in the plan other than allowing the insurance company to advertise the plan at the place of employment, and the employer receives no compensation. *Id.* at 492. Here, since Flowers pays 100% of the premiums, the plan is not exempted from ERISA by this regulation.

The plan also appears to satisfy the basic requirements of an ERISA plan because an examination of the plan would enable a reasonable person to "ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits." *Scott v. Gulf Oil,* 754 F.2d 1499, 1504 (9th Cir.1985) (citing *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982) (*en banc*)). Specifically, the plan itself appears to describe the above mentioned information.

Plaintiff asserts that the plan involved here is not an ERISA plan. Plaintiff argues that since Flowers did not commit itself to continuation of the plan (i.e., that Flowers could terminate the plan at any time), the plan does not fall under ERISA. Plaintiff relies on cases out of the 5th and 11th Circuits, and out of the Nevada Supreme Court.

Plaintiff states that in *Taggart Corp. v. Life & Health Benefits Administration,* 617 F.2d 1208 (5th Cir.1980), the Fifth Circuit held that an employer did not establish an ERISA plan unless there was some showing that he intended to guarantee the continuation of health insurance benefits for employees. Plaintiff is incorrect, as the Fifth Circuit in *Taggart* did not so hold.

Plaintiff asserts that in *Donovan v. Dillingham,* 688 F.2d 1367 (11th Cir.1982), the Eleventh Circuit held that for a plan to fall under ERISA, the employer must commit himself to the continuation of health insurance coverage. The Circuit held, "At a minimum, however, a plan ... under ERISA implies the existence of intended benefits, intended beneficiaries, a source of financing, and a procedure to apply for and collect benefits." *Id.* at 1372. The Court did not add plaintiff's asserted requirement in *Donovan.* Further, the Court noted that an employer must "establish or maintain the plan." *Id.* at 1373. Since an employer, need only establish a plan, imposing a requirement on an employer to commit himself to the continuation of the plan is improper.

At pages 1374–75, the *Donovan* Court noted:

> It also appears that some subscribers that previously had not furnished health insurance to their employees or members, and that did not subscribe to UIT pursuant to an agreement to furnish health benefits, nevertheless did purchase benefits for a substantial percentage of a class of employees or members under circumstances tending to show an anticipated continuing furnishing of such benefits (either through an MET or insurance carrier or otherwise);

Thus, the Court found that circumstances tending to show an anticipated continuing furnishing of benefits for a large group of employees was evidence that an ERISA plan existed. By no means, however, did the Court impose as a requirement for an ERISA plan that an employer commit himself to the continuation of health insurance coverage. We do not adopt such a requirement from a reading of *Donovan.*

In *Turnbow v. Pacific Mutual Life Insurance,* 104 Nev. 676, 765 P.2d 1160 (1988), the Nevada Supreme Court held:

> The *Dillingham* court also held that those employers subscribing to a MET, although not pursuant to collective bargaining agreements or a practice of providing insurance benefits, also established employee welfare plans if circumstances showed an anticipated continued furnishing of the benefits (citation omitted). Thus, *Dillingham* requires, in addition to the employer purchasing health insurance benefits for employees, that circumstances indicate the employer is

committed to the continuation of health insurance benefits for employees.

*Id.* at 678, 765 P.2d 1160. In reaching its conclusion that an ERISA plan requires the employer to commit itself to the continuation of health insurance benefits, the Nevada Supreme Court relied entirely on the *Donovan (Dillingham)* case. For the reasons discussed above, we conclude that the *Donovan* Court did not make such a finding. Rather, in that case, that the employer was committed to the continuation of coverage was evidence tending to show the existence of an ERISA plan. Given the express language that the employer need only establish the plan, we conclude that plaintiff's argument must fail. We conclude, therefore, that the plan in question is an ERISA plan.

■ Since the plan here is an "employee welfare benefit plan" within the meaning of ERISA, this Court must now determine whether plaintiff's state-law claims are preempted by ERISA. " '[T]he question whether a certain state action is preempted by federal law is one of congressional intent.' " *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985)). The United States Supreme Court has observed that "the express preemption provisions of ERISA are deliberately expansive, and designed to 'establish pension (or other ERISA type) plan(s) regulation as exclusively a federal concern.' " *Dedeaux*, 481 U.S. at 45–46, 107 S.Ct. at 1551–1552 (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981)). 29 U.S.C. § 1144, which governs ERISA's preemptive scope, states that (with the exceptions of 29 U.S.C. § 1144(b)), ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." The Court has interpreted the term "relate to" rather broadly: "a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.' " *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct.

2380, 2389, 85 L.Ed.2d 728 (1985) (quoting *Shaw v. Delta Air Lines*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)). *See Dedeaux*, 481 U.S. at 47, 107 S.Ct. at 1552. Following the above standard, all of plaintiff's claims relate to the plan, and therefore, appear preempted.

Plaintiff argues that the "savings clause" of ERISA entitles plaintiff to a finding that ERISA does not preempt plaintiff's state law claims. 29 U.S.C. § 1144(b)(2)(A), the "savings clause" provides:

... nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

Plaintiff asserts that Nevada Revised Statutes (NRS) § 686A.010 et seq. are state laws which regulate the insurance industry. Therefore, plaintiff alleges, his claims are not preempted. However, plaintiff concedes that he would nonetheless lose his tort and contract claims (page 9, line 28 to page 10, lines 1–2, of plaintiff's opposition [document # 26]). Given that all four of plaintiff's claims sound in either tort or contract, the purpose of the regulatory provisions of NRS § 686A.010 et seq. is irrelevant. Consequently, this argument must fail. Even if the statute underlying plaintiff's argument is a law regulating insurance within § 1144(b)(2)(A), the private right of action for violation of NRS 686A.310 is still preempted by ERISA. *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489 (9th Cir.1988). We conclude that the plan involved here is an ERISA plan and that plaintiff's claims are preempted by ERISA.

■ Plaintiff requests that we remand the case to state court in light of our finding that ERISA preempts each of plaintiff's claims. Plaintiff's asserted basis is that the amount in controversy does not exceed $50,000. Since this suit involves ERISA, however, a federal question is presented. No jurisdictional minimum amount in controversy is required when a federal question is presented. Consequently, plaintiff's motion for remand will be

denied. National and Lexington are entitled to summary judgment against plaintiff on the ground that ERISA preempts each of plaintiff's claims.

■ We now address Loyalty's motion for summary judgment. In addition to the grounds asserted by National and Lexington, Loyalty alleges that plaintiff has failed to present any evidence that Loyalty issued a policy to, received an application from, or entered a contract with the deceased. Further, the agent acting on behalf of Flowers, according to Loyalty, was never an agent for Loyalty. We agree that plaintiff has failed to present any affidavits or exhibits indicating that Loyalty might be liable to plaintiff. Consequently, we will grant Loyalty's motion for summary judgment on this ground and on the ground that ERISA preempts plaintiff's claims against Loyalty.

■ Finally, plaintiff requests leave to file an amended complaint alleging defendants' liability under the substantive provisions of ERISA. In opposition, defendants argue that to allow such an amendment would be futile since plaintiff has already received what he is entitled to receive under ERISA. Plaintiff counters that two plans existed, and therefore, he is entitled to more money. Defendants assert further that to allow plaintiff to file an amended complaint would unduly prejudice defendants since the original complaint was filed over one year ago.

Responding to defendants' first objection, if we disallow an amended complaint to be filed, we will in effect be ruling that plaintiff cannot even state a claim upon which relief could be granted against defendant or defendants or any combination thereof. We cannot make this determination now, especially since we cannot predict exactly what plaintiff would allege in an amended complaint.

Responding to defendants' second objection, under Fed.R.Civ.P. 15(a), United States district courts should liberally allow leave to file amended complaints. Defendants' assertion of prejudice to them in allowing plaintiff to file an amended complaint is based on the mere passage of time. They do not state how they will be prejudiced. Consequently, we conclude that plaintiff is entitled to file an amended complaint. At this time, we make no ruling as to whether an amended complaint could be timely filed, whether the relation back doctrine would apply, etc.

IT IS, THEREFORE, HEREBY ORDERED that the motion for summary judgment (document # 21) filed on behalf of defendants National and Lexington is GRANTED on the grounds that ERISA preempts each of the claims stated in plaintiff's complaint.

IT IS FURTHER ORDERED that the motion for summary judgment (document # 23) filed on behalf of defendant Loyalty is GRANTED on the grounds that ERISA preempts each of the claims stated in plaintiff's complaint and on the grounds that plaintiff has failed to present evidence showing that plaintiff is entitled to recover against Loyalty.

IT IS FURTHER ORDERED that plaintiff's motion (contained within document # 26) to remand this action to Nevada state court is DENIED.

IT IS FURTHER ORDERED that plaintiff's motion (contained within document # 26) for leave to file an amended complaint is GRANTED. Plaintiff shall have 15 days in which to file the amended complaint.