867 F.2d 489
 10 Employee Benefits Ca 1947
 Theodore KANNE and Beatriz Kanne, Plaintiffs-Appellees,
v.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant-Appellant,
Lincoln National Life Insurance Company and Harlow Carpets,
Inc., Defendants.
Theodore KANNE and Beatriz Kanne, Plaintiffs-Appellants,
v.
CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Defendant-Appellee.
 Nos. 85-5641, 85-5642.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1986.
Withdrawn from Submission July 2, 1986.
Resubmitted and Filed June 4, 1987.
Petition for Rehearing Granted and
Opinion Withdrawn from Submission
July 23, 1987.
 Argued and Resubmitted Nov. 23, 1987.
Decided Oct. 4, 1988.
As Amended on Denial of Rehearing
and Rehearing En Banc Feb. 2, 1989.
 
 Leonard Sacks, Encino, Cal., Carol A. Hay, and Andrew O. Feringa, Lakewood, Cal., for plaintiffs-appellees-appellants.
 James S. Cline, Suzette Clover, David L. Bacon, and Bruce A. Beckman, Los Angeles, Cal., for defendants-appellant-appellee.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER and PREGERSON, Circuit Judges, and WILKINS,* District Judge.
 PER CURIAM:
 
 
 1
 Connecticut General Life Insurance Co. (Connecticut General) appeals from a judgment awarding Theodore and Beatriz Kanne $252,234 in compensatory damages and $500,000 in punitive damages. The Kannes cross-appeal the denial of attorneys fees.
 
 
 2
 This action arises out of Connecticut General's medical coverage of the Kannes' son Jonathan. The Kannes seek reimbursement for an airline fare to transport Jonathan from the Netherlands to the United States for surgery, and compensation for the emotional distress caused them by the delay in payments for the airline, physician, and hospital bills. The Kannes based their claims on a number of theories and prevailed on three causes that are at issue on appeal: two state common-law causes of action (breach of contract, and breach of the duty of good faith and fair dealing) and one statutory cause of action under the California Insurance Code for failure to pay claims reasonably promptly.[1]
 
 
 3
 We withdrew the case from submission pending the Supreme Court's decision in Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), in the expectation that Pilot Life would resolve the threshold issue of whether the Kannes' state-law claims are preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Sec. 1001 et seq.[2] After Pilot Life and a companion case, Metropolitan Life Insurance Co. v. Taylor, 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987), were decided, we resubmitted the case and reversed the district court's conclusion that the claims were not preempted. Kanne v. Connecticut General Life Ins. Co., 819 F.2d 204 (9th Cir.1987).
 
 
 4
 We subsequently withdrew the opinion, 823 F.2d 284, granting the Kannes' request for rehearing, to consider two specific issues: (1) whether the insurance policy in question is a plan governed by ERISA; and (2) whether Cal.Ins.Code Sec. 790.03(h)(2) is preempted by ERISA. We now conclude both that the Kannes' insurance policy is an ERISA plan and that their claims against Connecticut General are preempted.
 
 DISCUSSION
 
 5
 I. Whether the Insurance Policy is Part of an ERISA Plan
 
 
 6
 The parties at trial apparently assumed that the insurance policy was covered by ERISA. Little or no attention was paid to the issue. The plan brochure, introduced by Connecticut General as an exhibit at trial, describes the plan as an ERISA plan. The Associated Builders and Contractors (ABC), an employer group to which Harlow Carpets belongs, is described as the Administrator of the plan. Harlow Carpets subscribed to the group health insurance plan administered by ABC. Pursuant to the requirements of ERISA, the plan was established as a trust entity, called the ABC Trust. It purchased a policy of group health insurance from Connecticut General.[3] Theodore Kanne was an employee of Harlow Carpets and was covered by the policy.
 
 
 7
 Under ERISA Sec. 3(1), 29 U.S.C. Sec. 1002(1), an "employee welfare benefit plan" or "welfare plan" is:(1) a "plan, fund or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to the participants or their beneficiaries.
 
 
 8
 Donovan v. Dillingham, 688 F.2d 1367, 1371 (11th Cir.1982) (en banc).
 
 
 9
 The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co., 809 F.2d 617, 625 (9th Cir.1987). At trial, the parties did not contest the issue of whether the ABC Trust was an ERISA plan. However, in the wake of the broad holding of Pilot Life, that ERISA preempts state law causes of action pertaining to improper handling of insurance claims under an employee benefit plan, the question of whether the policy here is governed by ERISA takes on vital importance to the Kannes, who now contest that an ERISA plan existed.
 
 
 10
 The Department of Labor has issued regulations excluding certain group insurance programs from ERISA's definition of "employee welfare benefit plan":
 
 
 11
 (j) Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
 
 
 12
 (1) No contributions are made by an employer or employee organization;
 
 
 13
 (2) Participation in the program is completely voluntary for employees or members;
 
 
 14
 (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
 
 
 15
 (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, or administrative services actually rendered in connection with payroll deductions or dues checkoffs.
 
 
 16
 29 C.F.R. Sec. 2510.3-1(j) (1987). A bare purchase of insurance, without any of the above elements present, does not by itself constitute an ERISA plan (although it may be evidence of the existence of an ERISA plan). See Donovan v. Dillingham, 688 F.2d at 1375. An employer has not established an ERISA plan if it merely advertises a group insurance plan that has none of the attributes described in 29 C.F.R. Sec. 2510.3-1(j). See Credit Managers Ass'n, 809 F.2d at 625.
 
 
 17
 The Kannes argue that, in respect to the group insurance at issue here, there is no evidence of the existence of the four criteria under 29 C.F.R. Sec. 2510.3-1(j), any one of which would prevent the exclusion of the insurance plan from ERISA coverage.[4] It is true that the record is ambiguous as to whether Harlow Carpets ever contributed any payments towards Theodore Kanne's insurance coverage or whether Kanne's participation was voluntary or automatic. Harlow Carpets' function with respect to the program was minor and ministerial, and no evidence indicates whether the plan was administered by a profit-making concern.
 
 
 18
 However, the problem with the Kannes' argument is their apparent assumption that Harlow Carpets' functions with respect to the plan determine ERISA coverage. According to ERISA Sec. 3(5):The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan and includes a group or association of employers acting for an employer in such capacity.
 
 
 19
 29 U.S.C. Sec. 1002(5) (emphasis added). Under this definition, ABC can be an ERISA employer for purposes of our analysis.
 
 
 20
 The plan brochure submitted by Connecticut General as an exhibit at trial describes the plan as an ERISA plan, evidencing the intent of ABC to create an ERISA plan. It is clear that, at a minimum, ABC does not merely advertise the group insurance, but rather, as the administrator of the plan, "endorses" it within the meaning of 29 C.F.R. Sec. 2510.3-1(j)(3). Thus the ABC plan is not one of the group insurance programs excluded by ERISA under the regulations. Because ABC is more than a mere advertiser of group insurance, there need not be employer contributions or automatic employee coverage to bring the plan within ERISA. See Credit Managers Ass'n, 809 F.2d at 625.
 
 
 21
 II. Whether ERISA Preempts the Kannes' State Law Claims
 
 
 22
 In Pilot Life, the Supreme Court held that state common law causes of action arising from the improper processing of a claim are preempted by federal law. The Kannes' claims arising out of delay in payment are claims for improper processing and therefore are preempted. Accordingly, the judgment insofar as it awards compensatory and punitive damages arising out of the common law claims for delay in payment must be vacated.
 
 
 23
 We must also decide whether ERISA preempts the Kannes' state statutory claims for compensatory and punitive damages arising from delay in payment. California Insurance Code Sec. 790.03(h) prohibits various "unfair insurance practices" having to do with the processing of claims. Among these unfair practices is an insurer's failure "to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies." Sec. 790.03(h)(2). At the time relevant to this appeal Sec. 790.03(h) created a private right of action. Royal Globe Ins. Co. v. Superior Court, 23 Cal.3d 880, 886, 153 Cal.Rptr. 842, 846, 592 P.2d 329 (1979), overruled by Moradi-Shalal v. Fireman's Fund Ins. Co., 46 Cal.3d 287, 250 Cal.Rptr. 116, 758 P.2d 58 (1988).[5] The district court found that Connecticut General had violated subsection (h)(2), giving rise to a cause of action in the Kannes.
 
 
 24
 The Kannes and numerous amici argue vigorously that Sec. 790.03(h) is not preempted by ERISA because Sec. 790.03(h) is a law regulating insurance within the meaning of the so-called "savings clause," Sec. 514(b)(2)(A) of ERISA, 29 U.S.C. Sec. 1144(b)(2)(A), which provides:
 
 
 25
 Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
 
 
 26
 The Kannes and the amici point out that the preempted common law causes of action for bad faith in Pilot Life were held not to be laws regulating insurance within the savings clause. They argue that because Sec. 790.03(h) regulates insurance, the savings clause saves that provision from preemption. We can assume, without deciding, that Sec. 790.03(h) is a law regulating insurance under the savings clause. Nevertheless, under Pilot Life we find the conclusion inescapable that the private right of action for violation of Sec. 790.03(h) is preempted by ERISA.[6]
 
 
 27
 The Kannes' argument asks us to limit Pilot Life's preemption holding to only those state laws which do not fall within the savings clause. To accept this argument, however, we would have to ignore the second half of Pilot Life, 107 S.Ct. at 1555-58, in which the Court made abundantly clear that its preemption holding was equally based on its acceptance of the Solicitor General's view that "Congress clearly expressed an intent that the civil enforcement provisions of ERISA Sec. 502(a) be the exclusive vehicle for actions by ERISA-plan participants and beneficiaries asserting improper processing of a claim for benefits." Id. at 1555. The Court stated:
 
 
 28
 In sum, the detailed provisions of Sec. 502(a) set forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress had rejected in ERISA.
 
 
 29
 Id. at 1556. We do not find it possible to read this language in a way that permits a state statute like Sec. 790.03(h) to supplement the ERISA civil enforcement provisions available to remedy improper claims processing. Accordingly, the Kannes' state statutory cause of action for mishandling of their insurance claim is also preempted.
 
 
 30
 Finally, we must consider whether the Kannes' claim for reimbursement of transportation costs is preempted. Because the claim "relate[s] to an employee benefit plan," see Metropolitan Life, 107 S.Ct. at 1546 (citing section 514(a), 29 U.S.C. Sec. 1144(a)), it is preempted unless it is based on a law that "regulates insurance." Section 514(b)(2)(A), 29 U.S.C. Sec. 1144(b)(2)(A). The Kannes' claim for reimbursement is premised on the interpretation of their insurance contract. However, California's common law of contract interpretation is not "specifically directed toward [the insurance] industry." See Pilot Life, 107 S.Ct. at 1555; see also Metropolitan Life, 107 S.Ct. at 1546. Nor generally does it effect risk spreading or concern the policy relationship between the insurer and the insured beyond that to which the parties have agreed in the insurance contract. Pilot Life, 107 S.Ct. at 1554-55. Accordingly, we conclude that California's common law of contract interpretation is not a law that "regulates insurance," and therefore is not saved from preemption.[7] The district court's judgment based on the Kannes' claim for transportation costs must also be vacated.[8]
 
 CONCLUSION
 
 31
 We find that the Kannes' group health insurance policy with Connecticut General is part of an ERISA plan. We hold that each of their state common-law and statutory causes of action is preempted by ERISA. Accordingly, we VACATE the judgment of the district court insofar as it awards damages in favor of the plaintiffs.
 
 
 
 *
 Hon. Philip C. Wilkins, Senior United States District Judge for the Eastern District of California, sitting by designation
 
 
 [1]
 The Kannes also claimed breach of fiduciary duty, fraud, and failure to adopt reasonable standards for the processing of claims. See Cal.Ins.Code Sec. 790.03(h)(3). They do not appeal the denial of those claims
 
 
 [2]
 ERISA's relationship to state laws is governed by Sec. 514 of the Act, 29 U.S.C. Sec. 1144. The pertinent subsections of Sec. 514 provide:
 (a) Except as provided in subsection (b) of this section, the provisions of [these subchapters] shall supersede any and all State laws insofar as they ... relate to any employee benefit plan....
 (b)(2)(A) Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.
 (d) Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States....
 
 
 [3]
 Prior to 1981, Harlow Carpets had subscribed to an insurance plan directly with Connecticut General, but then changed to the ABC plan
 
 
 [4]
 Because Connecticut General's claim of ERISA preemption is a federal defense in this lawsuit, Metropolitan Life Ins. Co. v. Taylor, 107 S.Ct. at 1546, the burden is on the defendant to prove the facts necessary to establish it
 
 
 [5]
 The Moradi-Shalal court held that the Royal Globe rule would continue to apply to all cases filed prior to the Moradi-Shalal decision. 46 Cal.3d at 292, 250 Cal.Rptr. 116, 758 P.2d 58
 
 
 [6]
 A handful of cases in federal district courts in California have by now been decided, reaching different results. We find ourselves most in agreement with the well-reasoned opinion in Roberson v. Equitable Life Assurance Soc., 661 F.Supp. 416, 423-24 (C.D.Cal.1987). We express no opinion as to whether the substantive provisions of Sec. 790.03(h) are themselves preempted so as to bar administrative enforcement by California's Insurance Commissioner
 
 
 [7]
 Because we find that the law on which this claim is based does not regulate insurance, we need not consider whether the claim is in any event preempted because of the deemer clause or because it is based on a law that conflicts with federal law
 
 
 [8]
 Finding these claims to be preempted, we do not consider the other issues that Connecticut General has raised on appeal
 The Kannes have appealed the district court's denial of their request for attorneys' fees. The California Code of Civil Procedure, section 1021, states as a general rule that parties shall bear their own costs of legal representation. See Brandt v. Superior Court, 37 Cal.3d 813, 820, 210 Cal.Rptr. 211, 214, 693 P.2d 796 (1985). The general rule may be altered by agreement of the parties. Id. Because the contract does not provide for the payment of attorneys fees for claims brought under state law, whether meritorious or not, we affirm this part of the district court's decision.