**Sylvia Anne du MORTIER and Robert O'Berg, Executors of the Estate of John du Mortier, Deceased, Plaintiffs,**

v.

**MASSACHUSETTS GENERAL LIFE INSURANCE COMPANY; Great Commonwealth Life Insurance Company; Walt Garner Assoc., Inc.; I.C.H. Companies and Does 1 through 50, inclusive, Defendants.**

No. CV 90–4916–RJK.

United States District Court, C.D. California.

Feb. 10, 1992.

Laura A. Slocumb, Pacific Palisades, Cal., W. Rod Stern, Groh, Carroll & Stern, Irvine, Cal., for plaintiffs.

O'Neal & Wodin, Marc Wodin, Northridge, Cal., for defendant Massachusetts General Life Ins. Co.

Kroloff, Belcher, Smart, Perry & Christopherson, J. Douglas Van Sant, Timothy M. Muscat, Stockton, Cal., for defendant Walt Garner Associates, Inc.

## MEMORANDUM OF DECISION AND ORDER

KELLEHER, Senior District Judge.

On February 3, 1992 the Motions of Plaintiffs for Partial Summary Judgment and of Defendant Massachusetts General Life Insurance Company ("MGLIC") came on for hearing before this Court. After hearing oral argument, the Court granted plaintiff's Motion for Partial Summary Judgment and took defendant MGLIC's Motion under submission. Having considered all the arguments and evidence presented, the Court hereby renders its judgment on both motions.

## I. Background

This is an action to recover benefits allegedly due under a cancer insurance policy issued to plaintiffs' decedent by defendant Great Commonwealth Life Insurance Company and assumed by defendant MGLIC, and brokered by defendant Walt Garner & Associates, Inc. The case was originally filed in state court and removed on the grounds that none of the defendants were citizens of the state in which it was brought pursuant to 28 U.S.C. § 1441.

Plaintiffs seek recovery under common law theories of breach of contract, breach of covenant of good faith and fair dealing, and fraud and violation of California Insurance Code Section 790.03.

## II. Plaintiffs' Motion for Partial Summary Judgment on Defendants' Affirmative Defense of ERISA Preemption

On Nov. 18, 1991 defendants MGLIC and Walt Garner brought motions for summary judgment on the grounds that the plan at issue was an ERISA plan and that therefore plaintiffs' state law causes of actions are all preempted by ERISA. This court denied those motions without prejudice on Nov. 18, 1991 on the grounds that there were material facts in dispute. On Dec. 9, 1991 the Court indicated to the parties that it wanted to resolve the ERISA preemption issue before trial. Accordingly, plaintiffs have brought this motion for summary judgment.

### A. *Standards for Summary Judgment Motion*

A party is entitled to summary judgment upon a showing that there are no material facts in dispute and that it is entitled to judgement as a matter of law. Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The party opposing the motion may defeat it by showing that there is a genuine issue of material fact for trial. *Id.* If a party will bear the burden of proof of a particular element at trial, then in order to withstand summary judgment, it must show sufficient evidence to establish that element. *Id.* at 322–323, 106 S.Ct. at 2552.

### B. *ERISA Preemption*

It is clear that if the plan is an ERISA plan, then all of the plaintiffs' state claims are preempted as a matter of law. *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 494 (9th Cir.1988), *cert. denied* 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

### C. *Is Cancer Plan an ERISA Plan?*

There are two ways in which the cancer policy could be an ERISA plan. The first way is if the cancer policy is considered to be part of the employer's general plan, which all admit is an ERISA plan.

#### 1. Is cancer plan a *Shaw* plan?

In *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Court found that a disability plan that was supplemental to a general ERISA plan could not qualify for the express statutory exemption from ERISA for plans created to comply with the federal Disability Benefit Law (ERISA § 514(b)(3)) unless it was "separately administered" and "maintained solely to comply with the Disability Benefit Law." *Id.* at 107, 103 S.Ct. at 2905. The Court was concerned about the "administrative impracticality" of subjecting a single multibenefit plan to "mutually exclusive pockets of federal and state jurisdiction." *Id.* Thus, the Court was clearly concerned with plans that are administered as a unit.

There is no evidence to support finding that the cancer plan was administered as a unit with the general plan. The cancer plan was offered by an entirely different insurer than the general plan and administered entirely separately by Walt Garner. The employer played no role in the administration of the cancer plan. Therefore, it is clear that the cancer plan does not come within *Shaw* and is not an ERISA plan by virtue of the general plan.

2. Is cancer plan an ERISA plan on its own?

■ The second way that the cancer plan could be an ERISA plan is on its own. In order to fall within ERISA the plan must meet the statutory definition of an "employee welfare benefit plan" in 29 U.S.C. § 1002(1). Once that is established, then the plan may still be exempted from ERISA pursuant to the regulations in 29 C.F.R. § 2510.3–1(j).

a. Is the plan an "employee benefit plan" within the meaning of 29 U.S.C. § 1002(1)?

29 U.S.C. § 1002(1) defines an "employee welfare benefit plan" or "welfare plan" as

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death or unemployment . . .

The Ninth Circuit has interpreted the statute to mean that there is an "employee welfare benefit plan" if five requirements are met:

> (1) a "plan, fund or program" (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits . . . (5) to the participants or their beneficiaries.

*Kanne,* 867 F.2d at 491–2.

■ In order to be an "employee welfare benefit plan" within ERISA, the plan need only meet these five definitional requirements. *Scott v. Gulf Oil Corp.,* 754 F.2d 1499, 1503 (9th Cir.1985). If the plan fails to meet the various other requirements set out for ERISA plans in the statute, *e.g.* §§ 1021–1031, 1101–1114, it is still a ERISA plan; it is just one that is not in compliance with the statute. *Id.* (citing to

*Blau v. Del Monte Corp.,* 748 F.2d 1348, 1352 (9th Cir.1985)).

■ "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne,* 867 F.2d at 492 (citing *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987)).

The Court finds that the plan does not meet the statutory definition of an ERISA plan since it was not established or maintained by the employer.

The employer played no role in the creation or administration of the plan. The only things that the employer did was allow the insurer to market individual policies to its employees, keep a file of forms on hand for the employees, and make the payroll deductions on behalf of the participating employees. When the employer chose to stop making the payroll deductions, the coverage continued by the participants paying the insurer directly. The employer in no way endorsed the plan.

■ Furthermore, throughout the entire period of coverage, MGLIC also treated the plan as if it was governed by state law and thus never complied with any ERISA reporting or disclosure requirements. Although the failure to comply with ERISA's reporting and disclosure requirements does not remove a plan from ERISA coverage, *Scott,* 754 F.2d at 1503, it is nonetheless relevant to who had established and was administering the plan.

Defendants have not presented any evidence that the *employer* established or maintained the plan. *Cf. Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1452–3 (5th Cir.1991). The employer did not arrange a group insurance program. *Cf. Credit Managers Asso. v. Kennesaw Life & Acci. Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987). The few ministerial activities undertaken by the employer here do not rise to "establishment or maintenance of the plan." *See Otto v. Variable Annuity Life Ins. Co.,* 814 F.2d 1127, 1135 (7th Cir.1986). Since,

there is not sufficient evidence to support a finding that the employer here established or maintained the plan, as a matter of law, the plan does not fall within the statutory definition of an ERISA plan.

b. Is the plan excluded from ERISA pursuant to 29 C.F.R. § 2510.3–1(j)?

Even if the plan did fall within the statutory definition, then the Court would find that it was exempted from ERISA coverage under 29 C.F.R. § 2510.3–1(j). The regulation sets out four requirements that must all be met for exemption.

(1) No contributions are made by an employer or employee organization; ...

(2) Participation in the program is completely voluntary for employees or members;

(3) The sole functions of the employer or employee organization with regard to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit theme to the insurer; and

(4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding profit, for administrative services actually rendered in connection with the payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3–1(j).

Three requirements are established since it is undisputed (1) that the employer made no contributions, (2) that the participation was entirely voluntary, and (4) the employer received no consideration of any kind in connection with the program.

The only real dispute is over whether the employer did anything *more* than is permissible under 29 C.F.R. § 2510.3–1(j)(3) without being considered to have endorsed or participated in the program.

1) Did Employer's Activities Go Beyond Requirement (3)?

■ In order to fail requirement (3) the employer must do more than "merely advertise" the plan and pass on the payroll deductions to the insurer. *Kanne,* 867 F.2d at 492. *Credit Managers,* 809 F.2d at 625.

■ The facts are not in dispute. In addition to doing the actions expressly permitted, the employer basically did two other things.

First, the employer maintained a file on the policy which contained informational materials, policy change request forms and claim forms, and the employer submitted coverage change forms to the insurance company. The Court is of the opinion that keeping these materials, handing them out, and sending them to the insurer did not constitute anything beyond "mere advertising."

Second, the employer's Manager of Compensation and Benefits actively tried to help one covered employee recover benefits from MGLIC under the same policy. This employee spoke only Spanish, and after being diagnosed with leukemia was unable to get any benefits at all from the insurer. The employer's compensation manager appears to have attempted to help the employee in dealing with the insurer and the administrator.

The Court finds that this isolated, and apparently voluntarily undertaken, activity, does not amount to official employer involvement. This kind of assistance to an participant, in an adversarial stance to the insurer and the administrator, is not the kind of involvement that the courts had in mind when they referred to some activity beyond "mere advertising." The third requirement is aimed at ferreting out situations where the employer is taking some position or doing some things on behalf of or in coordination with the insurer or administrator. It was not intended to cover a situation where the employer tries to help a single employee in a dispute with those entities.

Therefore, even if the plan did fall within the statutory definition, then it would still think be exempt from ERISA under the regulations.

Therefore, the Court grants plaintiffs' motion and finds that the plan is not an ERISA plan and that there is no ERISA preemption of plaintiffs' claims. Judgment is hereby entered against defendants on their defensive claim that the plaintiffs' claims are barred by ERISA.

## III. Defendant MGLIC's Motion for Summary Judgment

Plaintiffs are bringing causes of action against MGLIC for breach of contract, breach of the covenant of good faith and fair dealing, violation of California Insurance Code § 790.03, fraud, and declaratory relief. Plaintiffs are seeking all benefits due under the policy, punitive and exemplary damages, declaratory judgment, and costs and attorneys' fees.

Defendant MGLIC is seeking summary judgment on all claims against it, and in the alternative, partial summary judgment on the claims for breach of covenant of good faith and fair dealing and insurance code § 790.03, or in the alternative to that, partial summary judgment on the claim for punitive damages.

### A. *Breach of Contract Claim*

The parties disagree as to the scope of coverage under the contract. The written plan states that it provides benefits according to a Schedule of Benefits contained therein. The Schedule of Benefits is a specific list of precisely what charges are covered and to what extent. *See* Evidence in Support of MGLIC's Motion Exh. 200.

Under California law, the coverage under a written insurance policy is an issue of law, unless it is dependent upon conflicting extrinsic evidence. *Pepper Industries, Inc. v. Home Insurance Co.*, 67 Cal.App.3d 1012, 134 Cal.Rptr. 904, 907 (1977). If the language of the policy is clear, then it governs and its interpretation is a matter of law. *Hackethal v. National Casualty Co.*, 189 Cal.App.3d 1102, 234 Cal.Rptr. 853, 856 (1987). If the Court finds that the written contract is ambiguous, then it must be interpreted in favor of the insured. *Pepper*, 134 Cal.Rptr. at 907–908; *Hackethal*, 234 Cal.Rptr. at 856. Yet,

the Court must not create an ambiguity where there is none or rewrite the policy. *Id.*

If it is found to be ambiguous, then it is to be construed "most liberally in favor of the insured" and according to "the understanding of the ordinary reasonable person" or "the layman's reasonable expectations." *Russell v. Bankers Life Co.*, 46 Cal.App.3d 405, 120 Cal.Rptr. 627, 631–2 (1975). This is determined as a matter of law. *Wolfe Machinery v. Insurance Co. of North America*, 133 Cal.App.3d 324, 183 Cal.Rptr. 695, 697 (1982). If the interpretation depends upon disputed extrinsic evidence, then it cannot be done on summary judgment. *Delgado v. Heritage Life Ins. Co.*, 157 Cal.App.3d 262, 203 Cal.Rptr. 672, 676 (1984).

The parties disagree as to the interpretation of Benefit Provision ¶ F. Both parties contend that the provision is clear on its face. Yet, each puts forth a different interpretation of that clear meaning. Since neither party is contending that the interpretation depends upon disputed extrinsic evidence, the policy may be interpreted as a matter of law.

¶ F reads, in pertinent part, "the Company will pay the usual and customary charges for cancercidal chemical substances and their administration for the purpose of modification or destruction of abnormal tissue, to the extent these charges are not covered under the Attending Physician Benefit."

Defendants contend that this covers all costs for the chemotherapy drugs and the physician's charges for administering them. It is their position that it does not cover costs of noncancercidal drugs or therapy reasonably necessary to be given in coordination with chemotherapy.

Plaintiffs' position is that this covers broadly all medical services reasonably necessary for the determination of the appropriate prescription of cancercidal chemical substances for the purpose of destroying abnormal tissue. Thus, they contend that it covers the costs of physician's office visits and related medical treatment neces-

sary to insure that the prescribed dose is effective and safe.

The Court notes that each of the benefit provisions of the contract are written with specificity. This suggests that ¶ F should be interpreted to cover precisely what it states it covers and no more. The question then is what is covered by the phrase "the usual and customary charges for ... [the] administration [of cancercidal chemical substances]."

The Court is of the opinion that the usual and customary charges for the administration of cancercidal chemical substances includes the costs of calibrating the proper dosages and insuring that they are both effective and safe.

The technical definition of the word "administration" is not determinative of the meaning of the term in the context of this policy. The policy does not generally include technical medical language. Therefore, it would be inconsistent to interpret this one word in an overly technical way.

Therefore, the Court finds that as a matter of law the contract covers all medical services and drugs reasonably necessary for the determination of the appropriate prescription of cancercidal chemical substances. The Court thereby denies the defendants' motion for summary judgment on the plaintiff's first cause of action.[1]

B. *Breach of Covenant of Good–Faith and Fair Dealing and California Insurance Code § 790.03 Claims*

Plaintiffs' claims that MGLIC breached the covenant of good-faith and violated Ins.Code § 790.03 by, among other things, interpreting policy language in an unduly restrictive way and failing to provide a prompt and reasonable explanation for the denial of benefits. Ins.Code § 790.-03(h)(7) and (13).[2]

Summary judgment is not appropriate since there are material facts in dispute regarding these claims. For example, plaintiffs have produced the explanation of benefit forms provided to decedent and the explanations are not clear or understandable. Moreover, the resolution of the contract interpretation issue in favor of plaintiffs creates a question of fact as to whether defendant's interpretation was unduly restrictive. Defendant's contention that there is no evidence to support these claims is incorrect.

MGLIC also contends that there is no evidence to support a finding of the malicious and oppressive conduct required to support punitive damages. Plaintiffs though may be able to establish oppressive and malicious conduct by showing that defendants knew that their interpretation of the policy was improper. Although defendants were not bound to follow anything found in the *Escobedo* case since the judgment was vacated, the plaintiffs may be able to prove that the proceedings in that case put defendants on notice as to how the policy would be interpreted under California law. There are material facts in dispute regarding this.

In addition, some of the deposition testimony of MGLIC's Vice–President of Claims could support a finding of oppressive conduct.

Thus, because plaintiffs have shown that there are material facts in dispute supporting their claims of bad-faith and oppressive conduct, summary judgment on these counts is denied.

C. *Fraud Claim*

In order to establish fraud under California law, the plaintiff must prove five things: 1) a misrepresentation of material fact, or failure to disclose when under the

1. The Court is unable at this time to fully resolve plaintiffs' first cause of action since plaintiffs have not made it clear if ¶ F is the only benefit provision whose interpretation is being challenged.

2. Plaintiffs are also alleging that MGLIC breached the covenant and violated the insurance code by failing to investigate claims thoroughly, failing to evaluate claims objectively, denying claims based upon an improper standard, avoiding payment by suing deceptive practices, not communicating with the insured, and acting unreasonably during litigation. These are all grounds for liability and there is evidence to support them.

duty to do so, 2) knowledge of falsity, 3) intent to induce reliance, 4) actual and justifiable reliance, and 5) actual damages. Cal.Civ.Code § 1709, *Molko v. Holy Spirit Asso.*, 46 Cal.3d 1092, 252 Cal.Rptr. 122, 129, 762 P.2d 46, 53 (1988). If plaintiff is not able to establish one of these elements, then defendant is entitled to summary judgment.

Plaintiffs have shown sufficient evidence to support a finding that MGLIC was liable for fraud. They have produced the deposition testimony of the principal of Walt Garner, Mr. Garner, that he was also working for Great Commonwealth, the successor-in-interest to MGLIC. Therefore, Mr. Garner's fraud could be imputed to MGLIC. There is evidence that Mr. Garner defrauded plaintiff by failing to disclose material facts that he was under a duty to disclose and that decedent was induced to purchase the policy in reliance thereon. Therefore, summary judgment as to MGLIC would be improper.

The Court therefore denies defendant MGLIC's motion for summary judgment in its entirety.