Joyce FISHER, As Trustee for the Fisher Family Trust; Joyce Fisher as Executrix of the Estate of Dana Alan Fisher; and Joyce Fisher, individually,

v.

PRUDENTIAL INSURANCE COMPANY OF AMERICA, American Institute of Certified Public Accountants Insurance Trust, Rollins Burdick Hunter Company and Does 1 through 100.

No. C 91–20866 JW.

United States District Court, N.D. California, San Jose Division.

Dec. 15, 1993.

**398**

Michael C. Weber, Michaud & Weber, Cupertino, CA, for plaintiffs.

David R. Shane, Adams, Duque & Hazeltine, San Francisco, CA, for defendants.

*ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION BASED ON ERISA GOVERNING ALL STATE LAW CLAIMS*

WARE, District Judge.

### I.  BACKGROUND[1]

This case involves questions of whether ERISA governs life insurance provided by a society for professional accountants. The action is for life insurance benefits brought by Joyce Fisher as Trustee for The Fisher Family Trust, Joyce Fisher as Executrix of the Estate of Dana Alan Fisher, and Joyce Fisher, individually. The decedent, Dana Alan Fisher, a certified public accountant, acquired a life insurance policy under the American Institute of Certified Public Accountants Insurance Trust (AICPA Insurance Plan) on October 1, 1978.

Plaintiffs filed this action in state court in November, 1991, alleging (1) breach of contract for Defendants' failure to pay $500,000 in life insurance benefits; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of fiduciary duties; (4) constructive fraud; (5) intentional misrepresentation; (6) concealment; (7) negligent misrepresentation; (8) negligent infliction of emotional distress; and (9) intentional infliction of emotional distress. On December 26, 1991, Prudential removed the action to this Court.

Defendants move for Summary Adjudication that Plaintiffs' State Law Claims are Preempted by the Employee Retirement Insurance Security Act ("ERISA"). Having reviewed the respective pleadings, the Court finds that ERISA applies and preempts all of Plaintiffs' state law claims. Accordingly, the Court GRANTS Defendants' Motion for Summary Adjudication for the reasons discussed below.

#### A.  *The AICPA Insurance Plan*

The American Institute of Certified Public Accountants ("AICPA") Insurance Plan is administered by the AICPA to CPA's and CPA firms. The Plan is part of the AICPA Insurance Trust. Both the Insurance Plan and the Insurance Trust were established by the AICPA, a trade association of CPA's and accounting firms.

The Insurance Trust consists of a single trust, with a single Trustee, and a single insurer for its life and disability program. The plan consists of: (1) the "Group Insurance Plan", which provides life and accidental death and dismemberment coverage to CPA subscribers and all of their eligible employees, (2) the "CPA Plan," which provides life and accidental death and dismemberment coverage to CPA subscribers, and (3) the "Long–Term Disability Income Plan" which provides long-term disability benefits to CPA subscribers. To be eligible for the Insurance Plan, subscribers must be individual members of the AICPA or a sponsoring society, or both. Furthermore, to apply for coverage under the AICPA Plan, a subscriber must also apply for membership in the Trust.

In order to begin or increase participation under the "Group Insurance Plan" component, the firm or proprietor must have at least one eligible employee, other than the proprietor, partner or firm member, who is to become insured according to the Plan on the date the new or increased participation begins for the firm. Under the Group Insurance Plan, all eligible full-time employees of the firm must be insured under the Plan at all times, along with the eligible proprietor, partners or firm members.

---

1.  Plaintiffs object to the Declarations of John Flynn and Daniel A. D'Andrea in Support of Defendants' Motion for Summary Adjudication. Plaintiffs claim that the Declarations are replete with multiple hearsay evidence and are therefore inadmissible. The Court overrules Plaintiffs' objections as to both Declarations.

The administration of the Insurance Plan is accomplished as if the three plans which comprise the Insurance Plan are a single unit. The Plan is underwritten by Prudential and administered by the Trust's designated Plan Agent, Rollins, Hudig, Hall Co. ("RHH"), formerly known as Rollins Burdick Hunter Co. Solicitation for all three Plans and the determination of eligibility to apply for coverage are overseen by RHH as the Trust's designated Plan Agent. All requests for coverage that are deemed eligible are thereafter reviewed and accepted or denied by Prudential. Prudential also performs all claims-handling for the Insurance Plan from a single office. The Trustee, Bankers Trust Company, periodically sends Prudential a single wire transfer which covers the gross premiums for all three plans. In turn, Prudential places all premiums in a single fund. The parties providing administrative services for each component plan of the AICPA Insurance Plan are all the same. The same consultants, printers and clerical support staff handle each of the three component plans under the multibenefit Plan. Furthermore, all administrative expenses, including Trustee, Plan Agent and legal fees, are charged to the single trust.

The Insurance Trust files ERISA Form 5500 (Annual Return/Report of Employee Benefit Plan) on behalf of all three components. The form treats the three components as a unit. Form 5500, in line 34, totals the assets and liabilities of the Insurance Trust and the three component plans, all as part of a single administrative unit. The assets of all three plans are shown on line 34 both separately and in total. The administrative expenses are shown on Schedule C as a single unit.

### B. *Plaintiffs' Coverage Under the AICPA Insurance Plan*

Dana A. Fisher was a Certified Public Accountant. As a certified public accountant he was entitled to be a member of the American Institute of Certified Public Accountants and his state CPA society. By reason of his status as a CPA and his membership in the AICPA he was eligible to purchase life insurance from Prudential, through the AICPA.

Mr. Fisher first applied and obtained life insurance coverage in the amount of $100,000 under the CPA Plan effective February 1, 1976. He later applied for and received life insurance coverage in the amount of $200,000 under the Group Insurance Plan effective October 1, 1987, and long-term disability coverage under the Long–Term Disability Insurance Plan effective May 1, 1982. In October, 1978, Mr. Fisher increased his life insurance coverage to $150,000 under the CPA Plan.

Mr. Fisher requested an increase in his CPA Plan life coverage from $150,000 to $500,000 on two separate occasions in 1987 and 1989. Prudential claims that it rejected both requests and notified the Plan Agent. In April, 1989, however, RBH, Prudential's registered agent, advised Mr. Fisher that Prudential had accepted his application for an increase in his CPA Plan life insurance coverage. Mr. Fisher died of melanoma in November 1989. A timely claim was made for the $500,000 insurance benefits under the CPA plan. Prudential agreed to pay only $150,000, claiming that the increase to $500,000 was a clerical error.

### II. *DISCUSSION*

The Supreme Court has held that in drafting the ERISA statute, Congress intended to "completely preempt" state law regulation of qualified employee benefit plans. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 66, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987). Section 514(a) of ERISA provides, with enumerated exceptions, that ERISA shall supersede "any and all state laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA.

In the Ninth Circuit, for a state law claim to be completely preempted under ERISA, it must: (1) "relate to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a); and (2) be redressable under ERISA's civil enforcement provisions contained in 29 U.S.C. § 1132(a). *Kibble v. Quigley*, 1993 WL 81362, at *2, 1993 U.S.Dist. LEXIS, at *5 (N.D.Cal. Mar. 16, 1993) (citing *Metropolitan Life*, 481 U.S. at 63–66, 107 S.Ct. at 1546–48). If both of these conditions are met, the federal district court has jurisdiction over the matter even if the complaint states only state law claims. *See Pacific Retirement Plans, Inc.*, 828 F.Supp. 760, 763 (N.D.Cal.1993).

### A. *Is the CPA Plan an ERISA Plan?*

■ Prior to determining whether Plaintiff's state law claims are preempted according to the two-prong test set forth above it is necessary to first determine whether the plan at issue is an ERISA plan. If the plan at issue is an employee benefit plan under ERISA, then plaintiffs' state claims are preempted as a matter of law. *du Mortier v. Massachusetts General Life Ins. Co.*, 805 F.Supp. 816, 819 (C.D.Cal.1992). *See also Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987); *Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 494 (9th Cir.1988), (as amended, 1989) (per curiam), *cert. denied*, 492 U.S. 906, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989).

There are two ways in which the CPA Plan could be an ERISA Plan and thus trigger federal law preemption: (1) the CPA Plan itself could be an ERISA Plan; or (2) the CPA Plan could be part of a package of plans, some of which are ERISA Plans. *See du Mortier*, 805 F.Supp. at 819. The CPA Plan does not appear to constitute an ERISA plan nor does any party contend that it is an ERISA Plan. Therefore, for the CPA Plan to fall under ERISA coverage, it must be part of a package featuring plans which are ERISA covered.

In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), the Supreme Court addressed the situation of multibenefit package plans which contain both ERISA and Non–ERISA plans. In *Shaw*, the Court found that a disability plan that was supplemental to a general ERISA plan could not qualify for the express statutory exemption from ERISA for plans created to comply with the federal Disability Law unless it was "separately administered" and "maintained solely to comply with the Disability Benefit Law." *Id.* at 107, 103 S.Ct. at 2905. The *Shaw* Court reasoned that to apply state regulations to one portion of a multibenefit plan, while subjecting other portions to federal regulations, would be inefficient and result in "administrative impracticality". *Id.* at 107–08, 103 S.Ct. at 2905. The Court thus held that only separately administered disability plans maintained solely to comply with the Disability Benefits Law are exempt from ERISA coverage under § 4(b)(3) of ERISA. The Court was clearly concerned with plans that are administered as a unit. *du Mortier*, 805 F.Supp. at 819.

In *du Mortier*, the Court referred to a multibenefit plan, comprised of both ERISA and Non–ERISA insurance plans, which is administered as a unit, as a *Shaw* Plan. *Id.* The Court indicated that a *Shaw* Plan falls under ERISA, and therefore ERISA's preemption powers. *Id.* In holding that the plan at issue was not a *Shaw* Plan, the Court found that the Plan was not administered as a single unit. *Id.* In reaching this decision the Court focused on the fact that the Non–ERISA plan in question was offered by an entirely different insurer than the general plan (which contained the ERISA components) and administered entirely separately. *Id.*

### 1. *The Group Insurance Plan as an ERISA Component*

Defendants claim that the Group Insurance Plan, one of three insurance plans which comprise a multibenefit Plan, is an ERISA Plan which acts to draw the other Non–ERISA components, including the CPA Plan, into the boundaries of ERISA and its federal preemption clause.

■ The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person. *Kanne*, 867 F.2d at 492. To determine whether an insurance plan is an ERISA plan, a district court should consider 29 U.S.C. § 1002(1), which defines an employee welfare benefit plan, and 29 C.F.R. § 2510.3–1(j), which clarifies the meaning of "establishing and maintaining" such a plan. *See The Meadows v. Employers Health Insurance*, 826 F.Supp. 1225, 1227 (9th Cir.1993); *Harper v. American Chambers Life Ins. Co.*, 898 F.2d 1432, 1433 (9th Cir.1990). 29 U.S.C. § 1002(1) defines an employee welfare benefit plan in part as:

> any plan, fund or program which ... is established or maintained by an employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment[.]

The Court is satisfied that the Group Insurance Plan provided by AICPA constitutes

a "plan" under 29 U.S.C. § 1002(1). Moreover, it is clear that the Group Plan offers the benefits required under the statute for an employee welfare benefit plan, as the Plan offers benefit coverage for accidental death and dismemberment. The question whether the Group Insurance Plan is an ERISA plan under the statutory definition therefore turns on whether the AICPA is an "employer" under ERISA and whether the Plan was "established or maintained" by the AICPA.

■ Plaintiffs claim that the AICPA is not an "employer" as defined under ERISA and that the Group Insurance Plan is therefore not a valid ERISA plan. To determine whether the AICPA is an "employer" for ERISA purposes the Court looks to ERISA § 3(5):

> The term "employer" means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan and includes a group or association of employers acting for an employer in such capacity.

29 U.S.C. § 1002(5).

Recently, in *Kanne*, 867 F.2d 489, the Ninth Circuit held that the Associated Builders and Contractors, an industry-related association, acting indirectly on behalf of construction employers in setting up a group insurance program was an "employer" within ERISA's broad definition. The Court found that the plan was created and endorsed by an "employer" within the meaning of ERISA's definition of employee benefit welfare plan, and therefore "established or maintained" as required under 29 U.S.C. § 1002(5). *Id.* at 493.

The Court finds that pursuant to *Kanne* the AICPA is an employer under ERISA. Similar to the association in *Kanne*, the AICPA is an industry-related association. While the AICPA does not act directly as an employer, the Court finds that the AICPA does act "indirectly" in the interest of employers by providing the Group Life Insurance Plan to CPA's and their employees. For coverage under the Group Plan, the applying CPA or CPA firm is required to have at least one eligible employee (other than the proprietor or firm member) which will become insured under the Plan on the date the applying employer is included for coverage. By establishing an insurance plan through which employers can provide benefits to their employees, the AICPA is acting indirectly in the interest of employers in relation to an employee benefit plan and the Court finds that the AICPA as an "employer" established and maintained the Plan.

### 2. The Multibenefit Plan as a Single Unit

Having found that the Group Life Insurance Plan component of the AICPA's plan is an ERISA plan, for ERISA to preempt Plaintiffs' state law claims, the Court must determine whether the benefit plan was administered as a single administrative unit, which under *Shaw* would bring it under ERISA federal preemption.

In *du Mortier*, 805 F.Supp. 816, the Court, in addressing the issue of whether a "*Shaw* Plan" existed, focused on whether the plan was "administered as a unit." In determining the Plan was not administered as a unit, the Court focused on the fact that the plan was offered by an entirely different insurer than the general plan and was administered entirely separately. In the instant case the AICPA benefit plan, which consists of three insurance plan components, is backed by one single trust, has a single Trustee and a single insurer for its three life and disability programs. The benefit plan is underwritten entirely by Prudential and is administered by the Trust's designated Plan agent, RHH. Solicitation for all three plans and the determination of eligibility are overseen by RHH. The same administrative and clerical staff oversees all three plans. Moreover, the AICPA Insurance Trust files an Internal Revenue Service—Department of Labor Form 5500, Annual Return/Report of Employee Benefit Plan under ERISA, covering all three Plans as a single trust and a single administrative unit. The Court finds that the benefit Plan demonstrates characteristics of a plan which is administered as a single unit under *Shaw*, 463 U.S. 85, 103 S.Ct. 2890.

### B. Preemption of State Law Claims

■ Having determined that the plan at issue is part of a multibenefit "*Shaw*" Plan and under the federal preemption powers of ERISA, the Court must determine whether Plaintiff's specific state law claims are preempted by ERISA. As noted above, in the Ninth Circuit, for a state law claim to be completely preempted under ERISA, it

402

must: (1) "relate to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a); and (2) be redressable under ERISA's civil enforcement provisions contained in 29 U.S.C. § 1132(a). The Supreme Court construes the "relation to" language of the ERISA preemption test broadly. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 137, 111 S.Ct. 478, 481, 112 L.Ed.2d 474 (1990); *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45–9, 107 S.Ct. 1549, 1551–3, 95 L.Ed.2d 39 (1987). A law relates to a plan "if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 97, 103 S.Ct. at 2900.

Plaintiffs' complaint states claims for breach of contract, breach of a duty of good faith and fair dealing, breach of fiduciary duties, misrepresentation, fraud, and infliction of emotional distress. The Court finds sufficient support for preemption of Plaintiff's claims. *See Pilot Life*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (ERISA preempts breach of contract claims, claims for breach of a duty of good faith and fair dealing, claims for breach of fiduciary duty, intentional or negligent misrepresentation claims, fraud claims, emotional distress and punitive damage claims); *Kanne*, 867 F.2d 489.

Plaintiffs' state law claims arise out of the alleged denial of claimed benefits under the CPA Plan, one of three components of the multibenefit Plan which is an ERISA plan under *Shaw*. The claims "relate to" an ERISA-covered employee benefit plan within the meaning of ERISA's broad preemption clause. The Supreme Court has held that ERISA preempts a state-law cause of action brought by an ERISA plan participant or beneficiary alleging improper processing of a claim for plan benefits. *Pilot Life*, 481 U.S. at 47, 107 S.Ct. at 1552. The Court is satisfied that Plaintiff's state law claims "relate to" the employee benefit plan at issue as required for preemption under ERISA.

■ ERISA preempts state law causes of action that offer remedies for the violation of rights expressly guaranteed by ERISA and exclusively enforced by ERISA's civil enforcement mechanism. *Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124 (9th Cir. 1992). ERISA, through 29 U.S.C. § 1132(a)(1)(B), (g)(1), provides the exclusive civil enforcement remedies for Plaintiffs' claims regarding plan benefits as well as attorney fees. *See Pilot Life*, 481 U.S. 41, 107 S.Ct. 1549. (ERISA's civil enforcement remedies were intended to be exclusive).

Accordingly, for the reasons discussed above, the Court hereby ORDERS that the Defendants' Motion for Summary Adjudication that ERISA preempts Plaintiffs' State Law Claims is GRANTED.

IT IS SO ORDERED.