[22,25]
Terry J. Hatter, Jr., Senior United States District Judge
The Court has considered Nosrati's motion for an order that this matter is not governed by ERISA, and Provident's motion to establish ERISA application and for dismissal of state law claims, together with the moving and opposing papers.
On June 8, 2017, Nosrati filed this action against Provident in the Superior Court of California for the County of Los Angeles, alleging breach of contract as to his disability insurance policy, and breach of the duty of good faith and fair dealing. Nosrati obtained the policy while employed as a faculty member at the University of Southern California ["USC"] and while he maintained his medical practice at a clinic administered by USC Physicians ["USCP"]. On July 13, 2017, Provident removed, asserting both diversity and federal question grounds, with the federal question being based on complete preemption pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, et seq. ["ERISA"].
*993 Before the 1990s, USC faculty physicians, including Nosrati, maintained seventeen separate clinical practices - with each being a separate legal entity. In the early 1990s, USC faculty physicians created USCP, a non-profit organization to centralize the billing and administrative operations of the various clinical practices. USCP charged each faculty physician an administrative fee based on a percentage of their clinical income.
USCP had various connections to USC: (1) The dean of the USC School of Medicine appointed USCP's chief executive officer; (2) The chairs of USCP's seventeen medical departments taught at the USC School of Medicine; (3) Those department chairs were, also, members of USCP's Board of Directors; and (4) USCP physicians were entitled to use the USC brand name for their clinics.
After USCP was operational, as an incentive to attract more faculty physicians, it decided to establish a disability insurance plan [the "USCP Plan"] to supplement USC's self-funded disability plan [the "USC Plan"], in which many USC physicians were already enrolled. Thereafter, USCP solicited bids from various insurance brokers. Eventually, USCP decided to use Karen Haigh as its insurance broker, and to use a Provident disability policy, entitled Individual Business Operations Disability Insurance, as the USCP Plan. To entice USCP to choose its policy, Provident, through Haigh, offered concessions, including, inter alia , a guaranteed issue provision that applied after the first 100 physicians applied for and were approved or accepted into the USCP Plan, and a premium discount if USCP agreed to pay for the policies via allotments from each physician's payroll. The payroll allotments were individually authorized by each participating faculty physician through a salary allotment agreement ["Allotment Agreement"].
After the USCP Plan was operational, USCP's founding chief executive officer, Robert Stein, emailed a memorandum [the "Stein Memo"], likely written by Haigh, to USCP physicians summarizing the coverage terms and explaining USCP's role in selecting both Provident as the insurance carrier and the coverage terms. Thereafter, Haigh began marketing and selling policies directly to eligible USCP physicians. All applications, claims, and questions went through Haigh.
In 1993, Nosrati contacted Haigh to apply for coverage under the USCP Plan. After verifying that his income and employment met the USCP Plan's prerequisites, Nosrati was issued a USCP Plan disability policy.
In 1996, USC faculty physicians created a new entity, USC Care Medical Group ["USC Care"], to take over the functions of USCP, including billing and administrative duties. In 1998, USCP ceased operations. In a declaration executed for this action, Dr. Jeffry L. Huffman, USC Care's first chief executive officer, declared that USC Care was a part of USC and that USC was USC Care's sole corporate member. Huffman, also, declared that all billings from the clinical practices flowed through USC Care. Although neither party provided clear evidence as to USC Care's legal structure, it may be inferred that USC Care is a separate legal entity from USC because it has its own tax ID number.
In 2010, Nosrati filed a disability claim with Provident ["2010 Disability Claim"], and Provident began paying benefits beginning in January, 2011. On May 3, 2012, and September 13, 2012, Nosrati's physicians approved his return to work on a part-time basis. On September 26, 2012, Provident advised Nosrati that, because he was approved to return to work, his disability benefits would cease on March 21, 2013. On August 1, 2013, Provident received *994 a letter from Nosrati's physician that Nosrati's health had regressed. However, Nosrati did not formally file another disability claim with Provident, and Provident did not reinstate benefits under the 2010 Disability Claim. Between August 19, 2014, to November 14, 2014, Nosrati contacted Provident multiple times to inquire into why it stopped paying him benefits under the 2010 Disability Claim, to submit various physician letters, and to note his ongoing limitations and disability. On May 15, 2015, Provident conducted an in-person field visit with Nosrati. Ultimately, on December 21, 2015, Provident reaffirmed that it would not reinstate benefits under the 2010 Disability Claim.
On January 4, 2016, Nosrati administratively appealed Provident's decision. On March 1, 2016, Provident denied the administrative appeal. Consequently, on June 8, 2017, Nosrati filed this action.
Nosrati and Provident, now, seek a determination as to whether the USCP Plan is an employee welfare benefit plan governed by ERISA. If the USCP Plan is governed by ERISA, then, Nosrati's state law claims would be preempted. In essence, the parties are seeking partial summary judgment on the issue of ERISA preemption.
Summary Judgment Standard
The parties filed the functional equivalent of cross motions for partial summary judgment on the issue of whether the USCP Plan is an ERISA employee welfare benefit plan. If so, then Nosrati's state law claims would be preempted by ERISA. Provident, as the party asserting ERISA preemption, carries the ultimate burden of proof on both motions. See Kanne v. Conn. Gen. Life Ins. Co. , 867 F.2d 489, 492 n.4 (9th Cir. 1988). More specifically, Provident has the burden to establish a prima facie case that the USCP Plan is an ERISA employee welfare benefit plan. See Celotex Corp. v. Catrett , 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
ERISA
ERISA, generally, governs employee welfare benefit plans. Pilot Life Ins. Co. v. Dedeaux , 481 U.S. 41, 47-48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Whether a benefit plain is an ERISA employee welfare benefit plan is a question of fact, to be determined in light of all the surrounding circumstances from the perspective of a reasonable person. Zavora v. Paul Revere Life Ins. Co , 145 F.3d 1118, 1120 (9th Cir. 1998). Pursuant to 29 U.S.C. § 1002(1), for a benefit plan to be an ERISA employee welfare benefit plan, the plan must have been, inter alia , established or maintained by: (1) An employer; (2) An employee organization; or (3) Both an employer and an employee organization.
Provident contends that USC was the employer in relation to the USCP Plan or, in the alternative, that USCP was an employee organization. However, neither contention is supported by the undisputed facts.
Employer
For purposes of ERISA, 29 U.S.C. § 1002(5) defines an employer as "any person acting directly as an employer, or indirectly in the interest of the employer, in relation to an employee benefit plan." See Crull v. GEM Ins. Co. , 58 F.3d 1386, 1389 (9th Cir. 1995). To be an employer in relation to an ERISA employee welfare benefit plan, the employer must have established or maintained the plan. 29 U.S.C. § 1002(1). While USC arguably employed the faculty physicians, there is no evidence that it established or maintained the USCP Plan.
In du Mortier v. Mass. Gen. Life Ins. Co. , 805 F. Supp. 816 (C.D. Cal. 1992), the Central District considered whether an insurance *995 plan was an employee benefit plan where the employer provided insurance policy forms to employees and facilitated payroll deductions on behalf of its employees for the insurance policy, but the insurance company marketed the individual policies directly to employees. du Mortier , 805 F. Supp. at 820. Based on those facts, the Central District found that the employer had no role in creating or administering an employee benefit plan because the employer did not coordinate the group insurance plan. du Mortier , 805 F. Supp. at 820-21.
Here, there is no dispute that USC allowed Haigh to market USCP Plan policies to USCP physicians while those physicians were on USC's campus. However, there is a dispute as to whether the USCP Plan premiums were allotted from the faculty members' USC paychecks or their USCP clinical income checks. There is, also, a dispute as to whether USC or USCP determined a physician's eligibility and income for the USCP Plan. In considering these motions for partial summary judgment, the Court must draw all reasonable inferences in favor of Provident and assume that all of those disputed functions were performed by USC. See Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 268, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Nonetheless, payroll allotment, eligibility determinations, and income verification duties are mere ministerial activities insufficient to satisfy the requirement that the employer must have, inter alia , established or maintained a benefit plan for that plan to be deemed an ERISA employee welfare benefit plan. du Mortier , 805 F. Supp. at 820.
It is worth noting that for its own ERISA plan - the USC Plan - USC kept meticulous records; published Plan Descriptions, as required by 29 U.S.C. § 1021(a)(1) ; and annually filed IRS Form 5500, as required by 29 U.S.C. § 1021(b). However, USC did none of those things for the USCP Plan. While noncompliance with ERISA reporting and disclosure requirements does not necessarily mean that a benefit plan is not an ERISA employee welfare benefit plan, Scott v. Gulf Oil Corp. , 754 F.2d 1499, 1503 (9th Cir. 1985), the absence of those reports and disclosures is relevant to a determination of who established the plan. du Mortier , 805 F. Supp. at 820.
Provident, also, argued, in the alternative, that USC established the USCP Plan indirectly through USCP. However, the mere fact that USCP's department heads and board members were, also, USC professors does not prove that USCP indirectly established the USCP Plan on USC's behalf. Provident failed to set forth any evidence that USCP was actively working on USC's behalf as a plan administrator, or otherwise, with regard to the USCP Plan. See Kanne , 867 F.2d at 493. Similarly, Provident failed to set forth any evidence that USC maintained the USCP Plan indirectly through USCP's successor, USC Care. See Kanne , 867 F.2d at 493. The mere fact that USC is a corporate member of USC Care does not prove that USC maintained the USCP Plan.
Accordingly, Provident failed to establish a primae facie case that USC was an employer with regard to the USCP Plan or that USCP indirectly established or maintained the USCP Plan on behalf of USC.
Employee Organization
Provident argued that the USCP Plan is an ERISA employee welfare benefit plan because USCP was an employee organization that established or maintained the USCP Plan.
An employee organization is: (1) Any organization in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers *996 concerning an employee benefit plan ["Organization Clause"]; or (2) Any employees' beneficiary association organized for the purpose, in whole or in part, of establishing such a plan ["Employees' Beneficiary Association Clause"]. 29 U.S.C. § 1002(4).
Under the Organization Clause, the definition of an employee organization is broad - and the Ninth Circuit has yet to provide guidance as to its limits, if any. However, the Eleventh Circuit has indicated that "the gist of ERISA's definition of ... employee organization ... is that a plan ... falls within the ambit of ERISA only if the [employee organization's] plan ... covers ERISA participants because of their employee status in an employment relationship." See Slamen v. Paul Revere Life Ins. Co. , 166 F.3d 1102, 1104 (11th Cir. 1999). Here, participation in the USCP Plan required more than mere employment status. To qualify to participate in the USCP Plan, USC faculty physicians had to have a medical practice at USCP. By requiring that USC faculty physicians have a medical practice at one of USCP's clinics, participation in the USCP Plan was not solely based on USC employment. See Slamen , 166 F.3d at 1104. Accordingly, USCP was not an employee organization under the Organization Clause.
Under the Employees' Beneficiary Association Clause, an organization is an employees' beneficiary association if it was, inter alia , organized, in whole or in part, to establish an employee benefit plan. Mandala v. Cal. Law Enf't Ass'n , 561 F. Supp. 2d 1130, 1133-34 (C.D. Cal. 2008). In Hanson v. United Life Ins. Co. , 170 F. Supp. 2d 966 (C.D. Cal. 2001), the Central District construed the Employees' Beneficiary Association Clause to mean that the employees' beneficiary association must have been formed for the purpose of providing benefits to its members. Hanson , 170 F. Supp. 2d at 972. Here, USCP was formed to centralize the administrative activities of the seventeen clinics, and possibly shield USC from medical malpractice liability. Indeed, there was no evidence presented, here, to support a finding that USCP was established, in whole or in part, to provide employee benefits to USC employees. See Hanson , 170 F. Supp. 2d at 972. The uncontroverted evidence is that the USCP Plan was devised after the creation of USCP. Accordingly, USCP was not an employees' beneficiary association.
Thus, Provident failed to establish a primae facie case that USC was an employer in relation to the USCP Plan, or that USCP was an employee organization. Accordingly, Provident failed to establish a prima facie case that the USCP Plan is an ERISA employee welfare benefit plan. Consequently, Nosrati's state law claims are not preempted by ERISA.
Accordingly,
It is Ordered that Provident's motion to establish ERISA application and for dismissal of state law claims be, and hereby is, Denied.
It is further Ordered that Nosrati's motion for an order that this matter is not governed by ERISA be, and hereby is, Granted.