Emmett BARRETT, Plaintiff,

v.

Donald WALDBAUER, and Oregon Polytechnic Institute, and Oregon corporation, and Edon Enterprises, Inc., an Oregon corporation, Defendants.

No. CIV. 97–1815–FR.

United States District Court,
D. Oregon.

Nov. 12, 1998.

Thomas H. Tongue, Kathryn M. Pratt, Dunn, Carney, Allen, Higgins & Tongue, Portland, OR, for Plaintiff.

Christopher L. Reive, Bogle & Gates P.L.L.C., Portland, OR, for Defendants.

OPINION

FRYE, District Judge.

The matters before the court are 1) the plaintiff's motion for partial summary judgment (# 22); and 2) defendants Waldbauer and Edon Enterprises' motion for partial summary judgment (# 27).

**BACKGROUND**

On December 22, 1997, the plaintiff, Emmett Barrett, brought this action for violations of ERISA ("Employee Retirement Income Security Program") under 29 U.S.C. § 1132(a); breach of contract; piercing the corporate veil; and breach of third-party beneficiary obligation. Subject matter jurisdiction under ERISA and diversity jurisdiction were plead. The complaint was amended on June 1, 1998 to add a claim for fraudulent transfer. Barrett claims that the retirement payments of $1,500 per month that he had been receiving were to continue for the rest of his life but were terminated in 1997.

**UNDISPUTED FACTS**

In 1974, Barrett began working for defendant Oregon Polytechnic Institute ("OPI"), a non-profit corporation, as an assistant to the president of the college. He was promoted to the position of president of OPI the following year.

On June 15, 1977, Barrett and OPI negotiated a Management Agreement which provided Barrett with a salary of $1,500 per month and a $5 per month bonus for each student enrolled. In the event of his death, Barrett's estate was to receive a death benefit of $25,000, and his wife was to receive a $400 per month payment for the rest of her life. Management Agreement (attached as Exhibit E to Affidavit of Brian R. Talcott). Barrett executed this contract and also signed on behalf of OPI.

On June 16, 1983, after defendant Donald Waldbauer had become a member of the Board of Regents for OPI, the Management Agreement was amended as follows: "OPI covenants and agrees to pay Barrett retirement income in the amount of $1,500.00 per month each consecutive month during Barrett's lifetime. This covenant shall be binding upon any assign [sic] or successor or asset vendee of OPI." Amendment to Management Contract, p. 1 (attached as Exhibit F to Affidavit of Brian R. Talcott). There was no reserve fund set aside for this plan. *See* Deposition of Donald H. Waldbauer, pp. 51–52 (attached as Exhibit 2 to Declaration of Christopher L. Reive); and Deposition of Emmett E. Barrett, p. 23 (attached as Exhibit 3 to Declaration of Christopher L. Reive). The death benefits provided by the previous agreement were discontinued.

In January of 1984, Barrett retired but continued to be available to perform services for OPI. He began to receive monthly payments of $1,500 from OPI.

In April of 1985, OPI became a for-profit corporation, with Waldbauer as the owner of 75 of the 100 outstanding OPI shares and Edward Yakimchick, a non-party, owning the other 25 shares.

On May 26, 1989, Waldbauer and Yakimchick sold OPI to Phillips Educational Group of Portland ("Phillips") for $575,000, with an additional $200,000 received by Waldbauer as consideration for a covenant not to compete with Phillips. The Asset Purchase Agreement stated: "The Company [OPI] is indebted to Mr. Emmett Barrett for a monthly payment in the amount of $1,500, payable until the death of Mr. Barrett. The Company retains liability for the debt to Mr. Barrett." Asset Purchase Agreement, p. 40 (attached as Exhibit H to Affidavit of Brian R. Talcott).

OPI and Waldbauer entered into an indemnity agreement, whereby OPI agreed to indemnify Phillips for any losses or expenses that resulted from "[t]he failure of Oregon Polytechnic Institute, Inc. to perform its obligation to pay Emmett Barrett the sum of $1,500 per month during Mr. Barrett's lifetime." Indemnification Agreement (attached as Exhibit I to Affidavit of Brian R. Talcott). Waldbauer signed the agreement, which stated: "I hereby guarantee performance and payment of Western Business College, Inc. and Oregon Polytechnic Institute, Inc. under this Indemnification Agreement." *Id.*

Shortly thereafter, OPI changed its name to Edon Enterprises, Inc. ("Edon"). Waldbauer owned 75% of the outstanding stock of Edon. In October of 1989, Waldbauer received a bonus of $200,000 from Edon.

On August 9, 1989, Barrett was notified by letter of the name change and of the sale of OPI. *See* Waldbauer letter (attached as Exhibit 10 to Declaration of Christopher L. Reive). The letter did not advise Barrett that OPI had been dissolved.

Shareholders entitled to vote on March 12, 1990 authorized the dissolution of OPI/Edon. *See* Articles of Dissolution (attached as Exhibit K to Affidavit of Brian R. Talcott). After a board of directors meeting on May 24, 1989, the assets of OPI/Edon were sold to Phillips. The proceeds of the sale were distributed among the two shareholders, Waldbauer and Yakimchick. Barrett did not receive written notification of the dissolution of OPI/Edon.

Phillips closed OPI/Edon in 1996.

On June 2, 1997, Waldbauer notified Barrett via letter that payments would cease, stating that he had not "agreed to make the payments." *See* Waldbauer letter (attached as Exhibit L to Affidavit of Brian R. Talcott). (Barrett had received $1,500 monthly payments from June of 1983 to January of 1997, although the January payment was made in March of 1997). Payments initially came from OPI's general account. Edon made the payments from June of 1989 to December of 1989 from OPI's general account. Waldbauer personally made the payments from January of 1990 to January of 1997.

## CONTENTIONS OF THE PARTIES

Defendants Waldbauer and Edon move for summary judgment on seven of Barrett's eight claims for relief. The defenses raised by the defendants include an ERISA preemption claim, a statute of limitations bar, and shareholder liability claims.

The defendants contend that if ERISA does not apply, this court does not have

subject matter jurisdiction. The defendants argue that OPI and Edon, as dissolved Oregon corporations, are Oregon residents for purposes of determining diversity jurisdiction. The defendants further contend that with an Oregon resident as a plaintiff, there is no diversity jurisdiction.

Barrett moves for partial summary judgment as to the breach of contract claim against OPI, the breach of contract claim against Edon, and the claim to pierce the corporate veil against Waldbauer.

Barrett contends that the defendants have not asked the court to determine if the plan is an ERISA plan. However, in Barrett's supplemental memorandum, he concedes that "the contract between plaintiff and defendant OPI/Edon appears to be an ERISA plan." Plaintiff's Supplemental Memorandum in Support of his Motion for Partial Summary Judgment, p. 4. Barrett contends that the contract constitutes an ERISA plan because the lifetime payments were an "ongoing administrative scheme." *Id.*

## ANALYSIS

### *Diversity Jurisdiction*

Barrett has plead diversity jurisdiction, stating that at all material times, OPI and Edon were Oregon corporations, and that Waldbauer resides in the State of Washington. Barrett is an Oregon resident. "The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized." Fed.R.Civ.P. 17(b). Under Oregon law, "[d]issolution of a corporation does not ... [p]revent commencement of a proceeding by or against the corporation in its corporate name." O.R.S. 60.637(2)(e). In an unrelated case, this court allowed a plaintiff to amend a complaint to include a dissolved Oregon corporation as a defendant, although diversity jurisdiction was destroyed. *Gilliam v. Honda Motor Co.,* 1990 WL 165813 (D.Or.1990).

■ The court finds that Oregon citizenship attaches to the dissolved Oregon corporations for the purpose of determining diversity jurisdiction. Because both OPI and Edon were incorporated in the State of Oregon before the dissolution, and Barrett is an Oregon resident, complete diversity does not exist.

### *Subject Matter Jurisdiction* ·

Barrett has also plead subject matter jurisdiction, which requires the court to determine if the plan between Barrett and the defendants is an ERISA plan.

■ Under ERISA, 29 U.S.C. § 1002(1), an "employee welfare benefit plan" is a "plan, fund, or program" established or maintained by an employer or by an employee organization, or by both, for the purpose of providing, among other options, retirement income to employees. "The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne v. Connecticut Gen. Life Ins. Co.,* 867 F.2d 489, 492 (9th Cir. 1988); and *Credit Managers Ass'n of S. Cal. v. Kennesaw Life and Accident Ins. Co.,* 809 F.2d 617, 625 (9th Cir.1987).

If the contract at issue here is not an ERISA plan, this court does not have subject matter jurisdiction. *See Delaye v. Agripac. Inc.,* 39 F.3d 235 (9th Cir.1994), *cert. denied,* 514 U.S. 1037, 115 S.Ct. 1402, 131 L.Ed.2d 289 (1995). In *Delaye,* the plan at issue was an "Employment Contract" that only applied to the plaintiff and allowed severance pay to the plaintiff for as long as two years. While the *Delaye* court refused to determine if a one-person employment contract could be an ERISA plan, it did determine that "a relatively simple test has emerged to determine whether a plan is covered by ERISA: does the benefit package implicate an ongoing administrative scheme?" *Id.* at 237, referencing *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 12, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987).

■ The *Delaye* court found that although payments to the plaintiff were to continue for as long as two years, there was no implication of an ongoing administrative scheme because there was "nothing discretionary about the timing, amount or form of the payment." *Id.* Similarly, Barrett was to receive payments of $1,500 per month for the remainder of his lifetime, which is not discretionary. Without any ongoing, discretionary administrative analysis, Barrett's plan with OPI/ Edon does not implicate an ongoing adminis-

trative scheme and is not governed by ERISA.

*Amount in Controversy*

In their supplemental brief, the defendants contend that Barrett has not satisfied his burden of establishing that his claim satisfies the amount in controversy requirement. The court need not address this contention.

*Supplemental Jurisdiction*

Although the court has discretion to exercise jurisdiction over the subject matter of this action based upon supplemental jurisdiction, 28 U.S.C. § 1367, the court declines to do so. Even though Barrett contends that considerations of fairness weigh in favor of this court retaining jurisdiction, the court is not persuaded. This matter has been pending for ten months, but the length of the delay is attributable to Barrett's request for leave to amend the complaint, the stipulated motions to extend discovery, the stipulated motions for extensions to respond to motions, and Barrett's motion for an extension of time to respond to the summary judgment motions. Barrett must accept responsibility for any inconvenience due to delay.

## CONCLUSION

The plaintiff's motion for partial summary judgment (# 22) is denied. Defendants Waldbauer and Edon Enterprises' motion for partial summary judgment (# 27) based on lack of jurisdiction is granted. Because this court lacks jurisdiction, this case must be dismissed in its entirety.